

**SIGNED this 13th day of March, 2015.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-12184-TMD |
| | § | |
| 804 CONGRESS, L.L.C. | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |

## MEMORANDUM OPINION

This case is here on remand from the Fifth Circuit, which ordered this Court to determine whether a foreclosure commission claimed by a substitute trustee and attorney fees claimed by a mortgagee, both of which this Court earlier held unreasonable under section 506, nonetheless can and should be allowed under section 502. As discussed below, the substitute trustee's claim is allowed under section 502 because the claim is enforceable under state law and does not fall within any of the section 502(b) exceptions. However, the mortgagee's claim for attorney's fees is disallowed under section 502 because the mortgagee failed to prove that its fees were enforceable under state law.

1

## I.     BACKGROUND

The background of the case is straightforward, if unusual. 804 Congress, L.L.C., (the "Debtor") borrowed money from Wells Fargo Bank, N.A. ("Wells Fargo") to purchase an office building (the "Property"). The Debtor defaulted on the loan and filed bankruptcy twice to fight off foreclosure. The Debtor tried to sell the Property, but could not. After receiving relief from the automatic stay in the Debtor's second bankruptcy case, Wells Fargo directed the substitute trustee, Greta Goldsby ("Goldsby"), to post the property for foreclosure once again. The Property was sold during the foreclosure sale for $4,355,000. Since Wells Fargo's claim was only $4,114,536, this left $240,464 in surplus proceeds. The Deed of Trust securing the Property provided for the recovery of Wells Fargo's reasonable attorney's fees and collection costs, and for Goldsby to collect a commission of five percent of the sales proceeds in the event of a foreclosure. Since all creditors have been paid in full, the question before this Court was, and is, whether the surplus will be applied, in whole or in part, to the attorney's fees and the trustee's commission, or paid to the Debtor.

## II.     PRIOR PROCEEDINGS

This Court held a hearing in January of 2011 (the "Claim Objection Hearing"), after which it determined that it had jurisdiction to consider allowance of Goldsby's $217,750 claim for her foreclosure commission, and of Wells Fargo's $83,327 claim for attorney's fees.[1] This Court then determined that a $217,750 foreclosure commission was unreasonable, and could not be allowed under section 506.[2] However, this Court did find that $7,500 was a reasonable fee based on the work Goldsby performed,[3] and so allowed the claim in that amount. Finally, this

---

[1] Oral Ruling Tr. 10, No. 10-12184 (Bankr. W.D. Tex. Feb. 28, 2011), ECF No. 129.
[2] *Id.* at 13.
[3] *Id.* at 13, 15.

Court determined that none of the fees requested by Wells Fargo could be allowed under section 506, as Wells Fargo failed to support its claim with sufficient documentation.[4] This Court then ruled on the allowance of Wells Fargo's claim under section 502, and found that it could not be allowed as an unsecured claim either.[5] It appears that this Court did not rule on the allowance of Goldsby's commission under section 502.[6]

On appeal, the District Court reversed and remanded, holding that once this Court lifted the automatic stay and the foreclosure sale occurred, it no longer had jurisdiction over the property or the proceeds of the foreclosure sale.[7] The Debtor appealed the District Court's ruling to the Fifth Circuit, which first ruled that this Court did have jurisdiction to determine the reasonableness of the fees under section 506.[8] The Fifth Circuit then ruled that this Court did not abuse its discretion in determining that only $7,500 of the commission sought by Goldsby, and none of the fees sought by Wells Fargo, were reasonable and allowable under section 506.[9] Finally, the Fifth Circuit noted that Goldsby and Wells Fargo argued that even if the fees were properly disallowed under section 506, they should nonetheless be allowed as unsecured claims under section 502.[10] The Fifth Circuit went on to say that this argument raised a significant legal issue, as to which several circuit courts had ruled, but also noted that it was not clear whether the section 502 issues had been properly raised or considered by this Court.[11] Accordingly, the Fifth

---

[4] Oral Ruling Tr. 13-14, No. 10-12184 (Bankr. W.D. Tex. Feb. 28, 2011), ECF No. 129.

[5] *Id.* at 14.

[6] *Id. See also* transcript excerpt below at note 67. Judge Gargotta initially heard and ruled on the objections to the claims filed by Wells Fargo and Goldsby. Judge Davis took over the case after it was remanded by the Fifth Circuit.

[7] *804 Congress, L.L.C v. Wells Fargo Bank N.A. (In re 804 Congress, L.L.C.),* No. A-11-CA-360 LY, 2012 WL 1067566 at *8 (W.D. Tex. March 28, 2012) *rev'd and remanded,* 756 F.3d 368 (5th Cir. 2014); District Court Order by Judge Yeakel, ECF No. 184.

[8] *Wells Fargo Bank, N.A. v. 804 Congress, L.L.C. (In re 804 Congress, L.L.C.)*, 756 F.3d 368, 373-76 (5th Cir. 2014).

[9] *Id.* at 377.

[10] *Id.* at 378.

[11] *Id.* at 380.

Circuit remanded the case to this Court to consider whether the fees can and should be allowed as unsecured claims under section 502.[12]

### III.  JURISDICTION AND AUTHORITY

The allowance of fees under section 506 implicates federal law, as those fees must be "reasonable" under a federal law standard.[13] In addition, bankruptcy jurisdiction extends to matters that can have a "conceivable effect on the estate being administered in bankruptcy,"[14] and the allowance of a secured claim for fees under section 506 will have an effect on the estate because the fees allowed will decrease the unencumbered value available from the collateral to satisfy unsecured claims or equity. Allowance of an unsecured claim under section 502 affects the estate in the same way because doing so will dilute the distribution to other unsecured creditors or to equity. Of course, Congress considered allowance of claims under section 502 to be within the core jurisdiction of the bankruptcy court.[15] And based on the Supreme Court's discussion in *Stern v. Marshall,* the bankruptcy court has constitutional authority to issue final orders on allowance of claims.[16]

---

[12] *Wells Fargo Bank, N.A. v. 804 Congress, L.L.C. (In re 804 Congress, L.L.C.)*, 756 F.3d 368, 380 (5th Cir. 2014); Judgment by Judges Jolly, Garza and Owen, ECF No. 198, 199.

[13] 11 U.S.C. § 506; *804 Congress*, 756 F.3d at 374-75.

[14] *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 523 (5th Cir. 2014); *Galaz v. Galaz (In re Galaz)*, 765 F.3d 426, 430 (5th Cir. 2014) (quoting *Walker v. Cadle (In re Walker)*, 51 F.3d 562, 568 (5th Cir. 1995)); *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 266 (5th Cir. 2005).

[15] 28 U.S.C. § 157(b)(2)(B).

[16] 564 U.S. —, —, 131 S. Ct. 2594, 2618, 180 L.Ed.2d 475 (2011) ("[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.")

## IV.    ANALYSIS

### A.    Should the Claims of Wells Fargo and Goldsby be Allowed Under Section 502?

To determine whether the claims of Wells Fargo and Goldsby should be allowed under section 502, this Court must consider: (1) who had the burden of proof; (2) whether the parties raised their arguments under section 502 before the Claim Objection Hearing; and (3) whether the evidence shows that Wells Fargo and Goldsby have enforceable claims under section 502.

### 1.    Wells Fargo and Goldsby had the burden of proving the amount and validity of their claims.[17]

A creditor must file a proof of claim to obtain a distribution from the estate.[18] Here, Goldsby filed a proof of claim in the amount of $217,750, representing her five percent commission from the proceeds of the foreclosure sale.[19] Wells Fargo also filed a proof of claim, asserting a claim for $3,278,146.35, which included $83,326.80 in legal fees.[20] For supporting documentation, Goldsby and Wells Fargo each attached a document to their respective proofs of claim called "Summary of Supporting Documentation and Itemized Statement of Interest and Charges" (the "Summary"), which lists the note, deed of trust, and related documents. But neither claim attached any of the listed documents. In support of its claim for legal fees, the Wells Fargo Summary only says: "Other Fees - Legal: $83,326."[21] Notably, Wells Fargo did not attach documents detailing the legal fees to its proof of claim. Similarly, as to the foreclosure

---

[17] It appears as though the parties agreed to this allocation of the burden of proof at the Claim Objection Hearing, and that they did so in the context of not only section 506, but section 502 as well. Claim Objection Hr'g Tr. 29-30, No. 10-12184 (Bankr. W.D. Tex. Jan. 27, 2010), ECF No. 137. However, since Well Fargo now says section 502 was not in play, *see* Wells Fargo's Post-Remand Brief on Pleading Requirements, 10-12184 (Bankr. W.D. Tex. Dec. 30, 2014), ECF No. 209 at 5, this Court will address the burden of proof under section 502 while reviewing the details of the claims at issue.

[18] 11 U.S.C. § 501(a).

[19] Goldsby's Claim, No. 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), Claims Register, Claim No. 5.

[20] Wells Fargo's Claim, No. 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), Claims Register, Claim No. 6.

[21] *Id.*

commission, the Goldsby Summary only says: "$217,750.00 – for expenses of foreclosure, including a commission to Trustee of 5% of the bid per the Deed of Trust (5% of $4,355,000.00)."[22]

If a creditor files a proof of claim, the claim is deemed allowed, unless a party in interest objects.[23] "Deemed allowed" means that the holder of the claim will be able to "receive distribution from the debtor's assets in a case or under a plan."[24] To avoid this result, a party in interest must file a written objection to the claim.[25] Here, the Debtor did file objections, one to the Goldsby claim, and one to the Wells Fargo claim.[26] Upon objection by a party in interest, the claim is no longer "deemed allowed" under section 502(a); however, if the proof of claim was correctly filed in accordance with the relevant rules, it still constitutes "prima facie proof of that claim's validity and dollar value."[27] In its amended brief in support of its objection to the Wells Fargo claim, the Debtor argued that the claim is not prima facie valid because no documents were attached[28] – such as billing invoices, or more helpfully, the contemporaneous time records

---

[22] Goldsby's Claim, No. 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), Claims Register, Claim No. 5.

[23] 11 U.S.C. § 502(a).

[24] *Id*; COLLIER ON BANKRUPTCY ¶ 501.01[b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[25] Fed. R. Bankr. P. 3007. *See also* L. Rule 3007 ("(a) Objections to claims are contested matters and may be made on negative notice as set forth in L. Rule 9014…. (b) All Objections to claims shall specifically set forth all bases for the objection. General denials regarding the accuracy of the claim without specific contentions regarding the disputed items may result in the Court denying the Objection."). L.Rule 9014 incorporates some of the rules governing adversary proceedings from part VII of the Federal Rules of Bankruptcy Procedure, and others can be incorporated. *See* Local Rule 9014(h-i) (incorporating Fed. R. Bankr. P. 7015(c), Fed. R. Civ. P. 26(b) and (c), as implemented by Fed. R. Bankr. P. 7026).

[26] Debtor's Obj. to Claims, No. 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), ECF Nos. 58, 60.

[27] *Cavu/Rock Props. Project I, L.L.C. v. Gold Star Constr., Inc. (In re Cavu/Rock Props. Project I, L.L.C.)*, 516 B.R. 414, 422 (Bankr. W.D. Tex. 2014) (citing Fed. R. Bankr. P. 3001(f)).

[28] Debtor's Amended Brief in Support of Obj. to Claims, 10-12184 (Bankr. W.D. Tex. Jan. 21, 2011), ECF No. 96 at 6. Rule 3001 of the Federal Rules of Bankruptcy Procedure governs the form and content of a proof of claim. For claims based on a writing, Rule 3001(c)(1) requires creditors to file a copy of the writing with the proof of claim or, if the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction. Fed. R. Bankr. P. 3001.

generally used in and out of bankruptcy cases to determine the reasonableness of fees.[29] Additionally, the Debtor objected to both of the Wells Fargo and Goldsby claims on the grounds that both sought postpetition expenses under 11 U.S.C. § 506(b) that had to be requested through a motion rather than a proof of claim, and that the fees were unreasonable and should be disallowed under section 506(b).[30]

If a party in interest objects to a proof of claim that is entitled to prima facie validity, the burden is on the objecting party to introduce evidence sufficient to rebut the presumption of validity.[31] To rebut the claim, the evidence the objecting party produces must be "at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."[32] If the objecting party produces sufficient rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence.[33] For claims that are not entitled to prima facie validity, the claimant bears the initial burden to produce evidence to support the amount and validity of the claim.[34]

---

[29] *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291, 1298-99 (5th Cir. 1977) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-19 (5th Cir. 1974)); *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818-19 (Tex. 1997).

[30] Debtor's Obj. to Claims, No. 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), ECF Nos. 58, 60.

[31] *In re Armstrong*, 320 B.R. 97, 102-4 (Bankr. N.D. Tex. 2005).

[32] *In re Rally Partners, L.P.*, 306 B.R. 165, 168 (Bankr. E.D. Tex. 2003) (citing *Lundell v. Anchor Const. Specialists, Inc.* (*In re Lundell*), 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) *aff'd*, 242 F.3d 367 (2d Cir. 2000)).

[33] *Cavu/Rock Props. Project I, L.L.C. v. Gold Star Constr., Inc. (In re Cavu/Rock Props Project I, L.L.C.)*, 516 B.R. 414, 422 (Bankr. W.D. Tex. 2014); *Rally Partners, L.P.*, 306 B.R. at 168.

[34] *In re Cluff*, 313 B.R. 323, 337 (Bankr. D. Utah 2004). Some courts have found that to challenge the prima facie validity of a claim, the objecting party must: "(1) assert in a writing filed with the Court that there is some reason the claimant does not have a right to payment; (2) sign the objection; (3) if appropriate, assert that the claim is in fact based on a writing and that the documentation attached to the claim is insufficient; and (4) come forward with some legal reason or some factual evidence to defeat the claim." *Id.* While failure to attach documentation to support the proof of claim will not result in automatic disallowance of the claim, it "will strip the claim of its prima facie validity…." *In re Brunson*, 486 B.R. 759, 769 (Bankr. N.D. Tex. 2013) ("[C]ourts almost uniformly agree that the failure to attach documentation sufficient under Bankruptcy Rule 3001 will strip the claim of its *prima facie* validity under Bankruptcy Rule 3001(f), but will not result in automatic disallowance.") The amount and type of documentary evidence needed to support a claim must be determined by the facts and

Here, regardless of whether the Wells Fargo and Goldsby claims are entitled to the presumption of prima facie validity, this Court finds that the Debtor sufficiently rebutted the presumption of validity and the burden was on Wells Fargo and Goldsby to produce evidence to support their claims. As noted, Wells Fargo attached no evidence to support its claim for attorney's fees.[35] Goldsby likewise failed to attach documentation to support her claim.[36] In its objections to the claims, the Debtor argued that the fees and commission were not reasonable,[37] "which, if believed, would refute at least one of the allegations that is essential to the [claims'] legal sufficiency"[38] under section 506, and as we shall see, under section 502 as well. In other words, since Wells Fargo and Goldsby merely asserted that the Debtor owed fees and provided no evidence to support the amounts owed, the Debtor's assertion that the amounts claimed were too high was "at least equal in probative force" to the evidence in the claims.[39] Therefore, the burden of production shifted to Wells Fargo and Goldsby to adduce evidence to support their claims.[40]

### 2. Both parties sufficiently raised their section 502 arguments before the Claim Objection Hearing.

The next questions are whether Wells Fargo and Goldsby sufficiently and timely raised section 502 as a basis for allowance of their claims, and whether the Debtor adequately objected to allowance under section 502. As the Debtor pointed out in its post-remand brief, Wells Fargo

---

circumstances of the individual case. *In re Burkett, III*, 329 B.R. 820, 829 (Bankr. S.D. Ohio 2005) (citation omitted) ("Unfortunately, the actual documentary evidence needed to establish and verify the claim cannot be reduced to a bright-line test and must be decided on a case-by-case basis.")

[35] Wells Fargo's Claim, No. 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), Claims Register, Claim No. 6.

[36] Goldsby's Claim, No. 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), Claims Register, Claim No. 5.

[37] Debtor's Obj. to Wells Fargo Claim, 10-12184 (Bankr. W.D. Tex. Dec. 6, 2010), ECF No. 60 at 4.

[38] *In re Rally Partners, L.P.*, 306 B.R. 165, 168 (Bankr. E.D. Tex. 2003).

[39] *Id.*

[40] Arguably, the Debtor's assertion that Goldsby's commission is not reasonable was insufficient to shift the burden of production to Goldsby on her section 502 claim because under section 502 the claim need not be reasonable, just enforceable. However, the distinction is irrelevant because this Court finds that Goldsby sufficiently supported her claim by producing evidence in subsequent filings and at the Claim Objection Hearing.

and Goldsby requested only a secured claim for their fees in their proofs of claim; they requested unsecured claims for the first time at the Disclosure Statement hearing, and never amended their proofs of claim to assert unsecured claims.[41] However, the Debtor has not objected to the requests by Wells Fargo and Goldsby for unsecured claims on the ground that they did not properly assert them, and cannot seriously argue that it did not have notice that Wells Fargo and Goldsby wanted their fees allowed as unsecured claims. In fact, when the Debtor became aware of the alternate argument made by Wells Fargo and Goldsby for allowance under section 502, the Debtor amended its plan of reorganization to provide for the contingency that this Court would allow the fees and commission as unsecured claims.[42]

But did the Debtor properly raise an objection to allowance of the claims under section 502? In their post-remand brief, Wells Fargo and Goldsby correctly point out that the Debtor's original objections to their claims did not mention section 502.[43] However, the Debtor later filed a brief in support of its objections raising, albeit for the first time, the argument that the claims should be disallowed under section 502(b)(1).[44] Then, the next day, the Debtor filed an amended brief in support of its objections.[45] In the amended brief, the Debtor further elaborated on its argument that the claim should be disallowed under section 502(b)(1).[46] Specifically, the Debtor argued that Goldsby's claim is an entirely postpetition claim that cannot be recovered under

---

[41] Debtor's Post-Remand Brief on Pleading Requirements, 10-12184 (Bankr. W.D. Tex. Jan. 8, 2015), ECF No. 210 at 6.
[42] Id.
[43] Wells Fargo's Post-Remand Brief on Pleading Requirements, 10-12184 (Bankr. W.D. Tex. Dec. 30, 2014), ECF No. 209 at 1.
[44] Debtor's Brief in Support of Obj. to Claims, 10-12184 (Bankr. W.D. Tex. Jan. 20, 2011), ECF No. 94 at 2.
[45] Debtor's Amended Brief in Support of Obj. to Claims, 10-12184 (Bankr. W.D. Tex. Jan. 21, 2011), ECF No. 96 at 2, 10-11.
[46] *Id.*

section 502.[47] As to Wells Fargo, the Debtor noted in this amended brief that at the hearing on the Debtor's disclosure statement, Wells Fargo indicated that it would seek allowance of the disputed fees and expenses as an unsecured claim if those charges were denied as a secured claim and went on to argue that a determination that Wells Fargo's fees are unreasonable under section 506(b) precludes recovery under section 502(b).[48]

This amended brief is more than enough to put section 502 allowance in play under the Fifth Circuit's decision in *Southland Corp. v. Kilgore & Kilgore (In re Southland Corp.).*[49] In *Southland*, the creditors argued that the debtor never properly objected to their claim for attorney's fees because the debtor did not formally specify that the Texas Civil Practice and Remedies Code did not provide for recovery of the fees.[50] The Fifth Circuit found that the debtor properly objected on that basis in a letter brief, filed before the hearing, and at a second hearing on the claims objection.[51] The Fifth Circuit noted that Rule 3007 only says that the objection must be in writing and filed with the court, and found this requirement satisfied in that the amended objection to claim put the creditor on notice of a dispute, and the letter brief specified the legal theory behind the challenge.[52] If a letter was sufficient in *Southland*, then clearly the brief and amended brief filed by the Debtor here were enough to raise the section 502 objection. Furthermore, both parties argued the section 502 issue at the Claim Objection Hearing and "[t]he federal rules provide for belated and even implied amendment of pleadings to include issues in

---

[47] Debtor's Amended Brief in Support of Obj. to Claims, 10-12184 (Bankr. W.D. Tex. Jan. 21, 2011), ECF No. 96 at 2-5.

[48] *Id.* at 6-7. The Debtor also pointed out that Wells Fargo failed to designate any exhibits for the hearing on the Objections to Claim, as required by the Local Rules for the Western District of Texas, and so would not be able to meet its burden of proof at the hearing. *Id.* at 6.

[49] 19 F.3d 1084, 1087 (5th Cir. 1994).

[50] *Id.* at 1087.

[51] *Id.*

[52] *Id.* at 1087 n.1.

fact tried."[53] In fact, Judge Gargotta, the judge previously assigned to this case, mentioned section 502 in discussing the burden of proof with the parties at the start of the Claims Objection Hearing,[54] and expressly ruled on Wells Fargo's section 502 claim in his oral ruling on the claims objections.[55] Therefore, this Court finds that the section 502 issue was more than adequately raised by both parties, and was properly before this Court at the Claim Objection Hearing.

### 3. Wells Fargo did not provide evidence to support the enforceability of its claim under applicable state law; Goldsby did.

When a party in interest objects to a claim, the court must determine the amount of the claim as of the date the bankruptcy petition was filed and allow the claim unless it falls under one of nine exceptions.[56] The only exception relevant here is found in section 502(b)(1)—"such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."[57] According to the Supreme Court, section 502(b)(1) should be interpreted "with the settled principle that '[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.' That principle requires bankruptcy courts to consult state law in determining the validity of most claims."[58]

---

[53] *Ciesla v. Harney Mgmt. Partners (In re KLN Steel Products Co., L.L.C.)*, 506 B.R. 461, 477 (Bankr. W.D. Tex. 2014). This Court recognizes that the issue in *Ciesla* was decided under Bankruptcy Rule 7015, which is not applicable to contested matters like claim objections. *See* Fed. R. Bankr. P. 9014. However, the rationale should apply with even greater force to contested matters, which are usually faster paced and less formal than adversary proceedings.

[54] Claim Objection Hr'g Tr. 29-30, 10-12184 (Bankr. W.D. Tex. Jan. 27, 2011), ECF No. 137.

[55] Oral Ruling Tr. 14, 10-12184 (Bankr. W.D. Tex. Feb. 28, 2011), ECF No. 129.

[56] 11 U.S.C. § 502(b); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007).

[57] 11 U.S.C. § 502(b)(1).

[58] *Travelers*, 549 U.S.at 450 (citation omitted).

Here, the "underlying substantive law" comes from Texas. As to Wells Fargo's claim for attorney's fees, Texas law requires that the fees be reasonable.[59] Factors that courts consider to determine if fees are reasonable under Texas law include, among other things:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the fee customarily charged in the locality for similar legal services;

> (3) the amount involved and the results obtained; and

> (4) the experience, reputation, and ability of the lawyer or lawyers performing the services.[60]

Without evidence on these factors, this Court "has no meaningful way to determine if the fees were in fact reasonable and necessary."[61]

To support its request for fees, Wells Fargo called Amy Planty ("Planty") to testify in her capacity as vice president and loan adjuster for Wells Fargo.[62] But she only testified that Wells Fargo was billed $83,327 in legal fees before the foreclosure sale.[63] This testimony was insufficient. Wells Fargo needed to produce some form of record or testimony showing what services were rendered, what hourly rate was charged, how these fees were commensurate with the benefit provided to the client, and who provided the services, in order for this Court to determine whether the fees were reasonable under the circumstances of this case, and so enforceable under Texas law.[64]

---

[59] *Wells Fargo Bank, N.A. v. 804 Congress, L.L.C. (In re 804 Congress, L.L.C.)*, 756 F.3d 368, 377-78 (5th Cir. 2014) (citing *Garcia v. Gomez*, 319 S.W.3d 638, 646 (Tex. 2010)).

[60] *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov't Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)).

[61] *Id.* at 819.

[62] Claim Objection Hr'g Tr. 77, 10-12184 (Bankr. W.D. Tex. Jan. 27, 2011), ECF No. 137.

[63] *Id.* at 86.

[64] *Wells Fargo Bank, N.A. v. 804 Congress, L.L.C. (In re 804 Congress, L.L.C.)*, 756 F.3d 368, 377-78 (5th Cir. 2014) ("We note that even if Texas law governed the issue of attorney's fees, the Supreme Court of Texas has recognized that a noteholder can be limited to reasonable attorney's fees notwithstanding a clause in the note

Wells Fargo admitted that it chose not to produce detailed fee evidence for "tactical" reasons because its strategy was to challenge the jurisdiction of the bankruptcy court.[65] This is a tactical decision Wells Fargo will now have to live with. Concluding that the claim is unenforceable under state law, this Court concurs with and adopts Judge Gargotta's prior ruling that Wells Fargo's claim for attorney's fees under section 502 is denied because Wells Fargo provided no evidence to support the reasonableness of the fees requested.[66]

However, it appears that Judge Gargotta did not rule on Goldsby's request for allowance of the remainder of her commission as an unsecured claim under section 502,[67] and so this Court will now do so. Unlike Wells Fargo, Goldsby provided ample and undisputed documentation to support her claim in response to the Debtor's Motion to Authorize Distribution of Proceeds by

---

obligating payment of a specified percentage of the loan at attorney's fees to the noteholder.  Under Texas law, Wells Fargo would bear the burden of demonstrating that the fees it requested were reasonable.") (citing *Garcia v. Gomez*, 319 S.W.3d 638, 646 (Tex. 2010); *F.R. Hernandez Constr. & Supply Co. v. Nat'l Bank of Commerce of Brownsville*, 578 S.W.2d 675, 676-77 (Tex. 1979)). *See also Schwertner Backhoe Servs., Inc. v. Kirk (In re Kirk)*, Adv. No. 11-01239, 2015 WL 402995 at *7-8 (Bankr. W.D. Tex. 2015) (citing *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

[65] Remand Hr'g Oral Argument at 10:20-22, 10-12184 (Bankr. W.D. Tex. Dec. 18, 2014).

[66] Oral Ruling Tr. 14, 10-12184 (Bankr. W.D. Tex. Feb. 28, 2011), ECF No. 129, *see* transcript excerpt below at note 67.

[67] *Id*:

MR. SATHER: Your Honor, is that the Court's ruling on the claims objections as well?

THE COURT: On the claims objection, as I understood it, there was also in there -- your argument was that if I disallowed it as it related to the collateral, there was still the question as raised by Mr. Valdes why that couldn't be an unsecured claim. Correct?

MR. SATHER: Yes, your Honor.

THE COURT: And your argument was, as I understand it, well if you can't prove it up as an over-secured claim, you can't prove it up as an unsecured claim. Correct?

MR. SATHER: That is correct. But if it's denied as not reasonable, it can't be allowed as an unsecured claim.

THE COURT: And that's correct. And reluctantly, I will say, reluctantly, that's the finding of the Court, that it can't be allowed as an unsecured claim either **because there's not the proper proof** for the Court to allow it.

*Id.* The highlighted language clearly refers to the lack of evidence submitted by Wells Fargo, but could not apply to Goldsby, as she did introduce substantial evidence in support of her claim.

13

including as exhibits the Deed of Trust, which set out her five percent commission, and the document appointing her as substitute trustee.[68] Then, at the Claim Objection Hearing, Goldsby testified that she was appointed substitute trustee by Wells Fargo and directed to sell the Property at foreclosure.[69] During her testimony, Goldsby read into the record the section of the Deed of Trust that provided for her five percent commission.[70] She stated that five percent of the $4.355 million foreclosure sale price was $217,750.[71] This evidence is more than sufficient to establish Goldsby's claim under the "underlying substantive law" of Texas.[72]

Additionally, the Debtor agreed to the five percent commission by signing the Deed of Trust. Furthermore, the Debtor, as discussed below, conceded at the remand hearing that the five percent commission is reasonable and limited its objection to the legal argument that disallowing the remainder of Goldsby's commission as unreasonable under section 506 prevents her from collecting it as an unsecured claim under section 502.[73] Based on this, and on the evidence submitted to support the claim at the Claim Objection Hearing, this Court finds that Goldsby is entitled to the remainder of her commission as an unsecured claim under section 502 because the commission is enforceable against the Debtor under the Deed of Trust and state law.[74]

---

[68] Goldsby Resp. to Debtor's Mtn to Disburse Funds, 10-12184 (Bankr. W.D. Tex. Jan. 7, 2011), ECF No. 87, Ex. A, at 4.

[69] Claim Objection Hearing Tr. 32, 10-12184 (Bankr. W.D. Tex. Jan. 27, 2011), ECF No. 137.

[70] *Id.* at 45.

[71] *Id.*

[72] *Wells Fargo Bank N.A. v. 804 Congress, L.L.C (In re 804 Congress, L.L.C.),* 756 F.3d 368, 376 n. 30 (5th Cir. 2014) (citing *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 874 (Tex.App.-Dallas 2005, no pet.) (enforcing five-percent commission provision)). *See also Airline Commerce Bank v. Commercial Credit Corp.*, 531 S.W.2d 171, 176 (Tex.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.) (same)).

[73] Remand Hr'g Oral Argument at 10:24, 10-12184 (Bankr. W.D. Tex. Dec. 18, 2014).

[74] See cases cited at note 72 above.

**B. Can Goldsby's Remaining Commission be Allowed Under Section 502 After it was Ruled Unreasonable Under Section 506?**

Finally, this Court addresses the issue of whether Judge Gargotta's prior determination that only $7,500 of the Goldsby commission can be allowed under section 506 means that the balance of the contractually agreed commission cannot be allowed as an unsecured claim under section 502.[75] As the Fifth Circuit noted while remanding the case back to this Court, the First, Eleventh, and Ninth Circuits have determined that disallowance under section 506 does not foreclose allowance under section 502,[76] and that might be a sufficient answer for this Court. However, the Fifth Circuit also noted that those appellate decisions could be in tension with the Supreme Court's decision in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd*.[77] In addition, two Texas bankruptcy judges, including one from this District, have written thoughtful opinions concluding that attorney's fees can only be allowed under section 506, and not under section 502.[78] In light of these conflicting considerations and the Fifth Circuit's discussion of these authorities, this Court looks at the issue anew.

At the outset, it is not clear whether Judge Gargotta treated the Goldsby commission as attorney's fees, or as a different kind of fee or cost. Goldsby testified that if the commission is

---

[75] Although this threshold legal issue might more logically have been addressed first, before the application of section 502 to the facts, the Court reversed the order of the discussion to make sure, as instructed by the Fifth Circuit, that the record on the section 502 issue was adequately developed. *Wells Fargo Bank N.A. v. 804 Congress, L.L.C (In re 804 Congress, L.L.C.)*, 756 F.3d 368, 380 (5th Cir. 2014).

[76] *Id.* at 378-80 (citing *UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli)*, 501 F.3d 1, 5 (1st Cir. 2007); *Welzel v. Advocate Realty Invs., L.L.C. (In re Welzel)*, 275 F.3d 1308, 1317-18 (11th Cir. 2001); *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268, Ltd.)*, 789 F.2d 674, 678 (9th Cir. 1986)). *See also Ogle v. Fid. & Dep. Co. of Maryland*, 586 F.3d 143, 148-49 (2d Cir. 2009) (holding that an unsecured creditor is entitled to recover postpetition attorney's fees that were authorized by an otherwise enforceable prepetition contract); *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 683 (6th Cir. 2006) (holding that "unsecured creditors may recover their attorneys' fees, costs and expenses from the estate of a solvent debtor where they are permitted to do so by the terms of their contract and applicable non-bankruptcy law.")

[77] *804 Congress, L.L.C.*, 756 F.3d at 379 (citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 372-73 (1988)).

[78] *See In re Seda France, Inc.*, No. 10-12948, 2011 WL 3022563 at *1 (Bankr. W.D. Tex. July 22, 2011); *Pride Cos., L.P. v. Johnson (In re Pride Cos., L.P.)*, 285 B.R. 366 (Bankr. N.D. Tex. 2002).

15

allowed and paid, it will be paid to her firm in the same manner as any other fees collected by the attorneys in the firm.[79] However, this commission was clearly one earned in exchange for the service of conducting the foreclosure sale, and not for what would commonly be thought of as rendering legal services.[80] In any event, the language of sections 506 and 502 makes no distinction between attorney's fees, on the one hand, and costs, on the other, and so for purposes of this analysis, it should not matter how this Court characterizes Goldsby's commission.[81]

In addition to the general argument that fees disallowed under section 506 cannot be allowed under section 502, the Debtor made two other more specific arguments. In its post-remand brief, the Debtor argues that the remainder of Goldsby's commission should be disallowed because postpetition attorney's fees can only be allowed under section 506(b) and Judge Gargotta already ruled that the remainder of the commission could not be allowed under section 506(b).[82] The Debtor also argues that the commission sought by Goldsby should be disallowed on the basis that attorney's fees cannot be allowed as unsecured claims if the services were rendered after the petition date.[83] Courts that have analyzed allowance of fees under sections 502 and 506 have considered both of the Debtor's arguments, as well as the application of the Supreme Court's decision in *Timbers,*[84] and whether equity and policy favor disallowing

---

[79] Claim Objection Hr'g Tr. 50, 10-12184 (Bankr. W.D. Tex. Jan. 27, 2011), ECF No. 137 at 50.

[80] *Id.* at 45.

[81] 11 U.S.C. §§ 502, 506; *U.S. v. Ron Pair Enters.*, 489 U.S. 235, 241-42 (1989) (finding that under section 506(b) fees, costs and charges must all be reasonable, and must be allowed by agreement).

[82] Debtor's Post-Remand Brief, 10-12184 (Bankr. W.D. Tex. Nov. 15, 2014), ECF No. 207 at 11-12.

[83] *Id.* at 10-11.

[84] 484 U.S. 365, 372-73 (1988).

fees and costs under § 502.[85] Therefore, this Court will address all four arguments. Notably, all of the five circuit courts that considered this issue allowed the unsecured claims.[86]

1. **Section 502 governs allowance of all claims; section 506 governs allowance of secured claims.**

The Debtor's primary argument against allowance under section 502 appears to be that because section 506 states that "to the extent" a claim is oversecured, "there shall be allowed" related fees and costs under section 506(b), the only way fees and costs can be allowed is under section 506.[87] The problems with this argument are several. First, section 506(b) only addresses oversecured claims.[88] In contrast, section 502 is very general – addressing the allowance or disallowance of all claims that could be filed against an estate.[89] As the Ninth Circuit noted in *SNTL Corp. v. Centre Insurance Co. (In re SNTL Corp.)*,[90] where Congress intended to provide an exception to the general allowance provisions of section 502, it did so expressly in section 502(b), and section 506 is not one of the exceptions listed in section 502(b).[91]

---

[85] *See SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 841-45 (9th Cir. 2009) (discussing the four primary arguments regarding allowance of an unsecured claim for attorney's fees that were incurred postpetition).

[86] *Ogle v. Fid. & Dep. Co. of Maryland*, 586 F.3d 143, 148-49 (2nd Cir. 2009); *SNTL*, 571 F.3d at 841-45; *UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli)*, 501 F.3d 1, 5 (1st Cir. 2007); *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 680-83 (6th Cir. 2006); *Welzel v. Advocate Realty Invs., L.L.C. (In re Welzel)*, 275 F.3d 1308, 1317-18 (11th Cir. 2001).

[87] 11 U.S.C. § 506(b). Debtor's Post-Remand Brief, 10-12184 (Bankr. W.D. Tex. Nov. 15, 2014), ECF No. 207 at 13 (quoting Scarberry, *Interpreting Bankruptcy Code Sections 502 and 506: Post-Petition Attorneys' Fees in a Post-Travelers World*, 15 Am. Bankr. Inst. Law Rev. 611 (Winter 2007)).

[88] 11 U.S.C. § 506(b).

[89] 11 U.S.C. § 502. Courts have disallowed attorney's fees, in particular, under section 502, on the basis that section 502 is not on the list of Bankruptcy Code sections that provide for allowance of attorney's fees: 11 U.S.C. §§ 506 (oversecured creditors), 330 (estate professionals), 503 (administrative claims for fees that benefit the estate), 362(k) (as part of damages for violating the stay), and 523(d) (to debtors who win actions under 523). *In re Seda France*, No. 10-12948, 2011 WL 3022563 at *3 (Bankr. W.D. Tex. 2011); *In re Elec. Mach.*, 371 B.R. 549, 551 (Bankr. M.D. Fl. 2007); *Pride Cos., L.P. v. Johnson (In re Pride Cos., L.P.)*, 285 B.R. 366, 372 (Bankr. N.D. Tex. 2002). *But see SNTL*, 571 F.3d at 842-43. However, each of the cited sections has a very distinct purpose and, with the exception of section 330 (which is not applicable here), the allowance of attorney's fees is only one limited aspect of what those sections address. Section 502, in contrast, broadly covers all claims against the estate, and so should apply to allowance of attorneys' fees or costs outside the specific contexts addressed by those statutes.

[90] 571 F.3d at 842-43.

[91] 11 U.S.C. § 502(b); *Id.*

Second, as discussed by the First and Ninth Circuits in *UPS Capital Business Credit v. Gencarelli (In re Gencarelli)* and *SNTL Corp*, respectively, the topic of section 506 is allowance of secured claims.[92] It does not say or imply that disallowance as a secured claim under section 506 constitutes disallowance under section 502. Put another way, section 502 deals with the allowance of claims in general, whereas section 506 deals with the allowance of claims *as secured claims*, and is silent on what happens to a claim that is disallowed as a secured claim.[93]

Third, the Supreme Court's unanimous opinion in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*[94] is instructive. The *Travelers* decision overturned a judge made rule, the *Fobian* rule, in the Ninth Circuit that had held that attorney's fees could not be recovered for litigating bankruptcy issues.[95] The Supreme Court looked to the text of section 502, and to the definition of claim in section 101(5)(A), and concluded that courts should allow claims against the estate if the claims are enforceable under substantive nonbankruptcy law, unless the enumerated exceptions contained in section 502(b) apply.[96] The Supreme Court then looked at the attorney's fees at issue and determined that because the attorney's fees were enforceable under nonbankruptcy law, and not included within the exceptions contained in section 502(b), they should have been allowed.[97]

---

[92] *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 842-43 (9th Cir. 2009); *Gencarelli v. UPS Capital Bus. Credit (In re Gencarelli)*, 501 F.3d 1, 5 (1st Cir. 2007).

[93] *SNTL*, 571 F.3d at 842 ("Section 502(b), which applies to claims generally, does disallow unmatured interest (see 11 U.S.C. § 502(b)(2)); it does not specifically disallow attorneys' fees of creditors or certain other charges. Section 506(b), on the other hand, specifies what may be included in a secured claim."); *Gencarelli*, 501 F.3d at 5 ("There is universal agreement that whereas section 506 furnishes a series of useful rules for determining whether and to what extent a claim is secured (and, therefore, entitled to priority), it does not answer the materially different question of whether the claim itself should be allowed or disallowed….. Rather, the general rules that govern the allowance or disallowance of claims are set out in section 502." (internal citation omitted)).

[94] 549 U.S. 443 (2007).

[95] *Id.* at 452-53 (abrogating *Fobian v. Western Farm Credit Bank (In re Fobian)*, 951 F.2d 1149 (9th Cir. 1991)).

[96] *Id.* at 449-51.

[97] *Id.* at 450-54.

18

Here, Goldsby's commission is enforceable under the Deed of Trust and state law, and does not fall under any of the other section 502(b) exceptions; thus, under the Supreme Court's analysis in *Travelers*, it should be allowed. Although the Supreme Court in *Travelers* expressly did not rule on whether a section 506(b) ruling precludes allowance under section 502,[98] the Supreme Court's instruction to apply substantive law to determine the enforceability of the claim under section 502, together with the settled rule that a federal law test of "reasonableness" applies to allowance under section 506(b),[99] establishes that different tests apply under sections 502 and 506.[100] And this follows as they are different statutes designed to accomplish different purposes. This disposes of the Debtor's argument that the portion of the commission deemed "unreasonable" under section 506 cannot be allowed under section 502. The test under section 502 is not whether the commission is reasonable; but rather, whether the commission is enforceable,[101] and the enforceability of the commission was conceded by the Debtor at the post-remand hearing:

> THE COURT: 5% is generally reasonable for real estate transactions regardless of how much time was spent.
>
> MR. SATHER: Yes.

---

[98] *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 455 (2007).

[99] *Welzel v. Advocate Realty Invs., L.L.C. (In re Welzel)*, 275 F.3d 1308, 1315 (11th Cir. 2001) (citing *First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.)*, 104 F.3d 200 (8th Cir. 1997); *Hudson Shipbuilders*, 794 F.2d at 1051; *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268, Ltd.)*, 789 F.2d 674, 675-76 (9th Cir. 1986); *Unsecured Creditors' Comm. 82-00261C-11A v. Walter E. Heller & Co. S.E., Inc. (In re K.H. Stephenson Supply Co.)*, 768 F.2d 580 (4th Cir. 1985)); *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1056-57 (5th Cir. 1986).

[100] *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 842 n. 17(9th Cir. 2009); *Welze1*, 275 F.3d at 1314-16 (discussing reasonableness standard under section 506(b) verses enforceability standard under state law). *See also Hudson Shipbuilders*, 794 F.2d at 1058. (finding that bankruptcy courts should determine "reasonableness" under section 506 using the factors set forth in *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291, 1299 (5th Cir. 1977)). As to attorney's fees in Texas, though, the "reasonableness" test under section 506 is virtually the same as the "enforceability" test under state law. *Compare First Colonial*, 544 F.2d at 1299 *with Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818-19 (Tex. 1997).

[101] *Travelers*, 549 U.S. at 450.

THE COURT: I think this is from the 5th Circuit opinion and there's footnote 30 in that opinion and it has a bunch of cases…

MR. SATHER: Right and the testimony was that the foreclosure practice was kind of a loss leader because in cases where it was bid in they didn't get a trustee's commission and she only got it on the rare ones where there were surplus proceeds.  And so **to the extent that 502(b) does not cut off their claim as of the petition date and to the extent that they argued that denial under 506(b) does not also deny them under 502, then they would be allowable.  I mean, I can read a deed of trust and I don't disagree with the math that the sales proceeds times 5% equals $217,750.**[102]

So the commission, while unreasonable under section 506, is still enforceable under section 502.

2. *Frenville* **Redux: Prepetition claims can be allowed even though they are determined by postpetition events**.

Adopting a now discredited argument accepted at one time by the Third Circuit in *Avellino & Bienes v. M. Frenville Co., Inc. (In re Frenville)*,[103] the Debtor next asserts that claims incurred postpetition cannot be allowed as unsecured claims because section 502(b) only allows claims as they existed on the petition date; so amounts accrued postpetition cannot be allowed as part of the claim.[104] This argument misses the fact that Goldsby's commission is actually a prepetition obligation, imposed on the Debtor by the loan documents,[105] which became fixed postpetition when the foreclosure sale took place. That the debt was contingent and unliquidated on the petition date does not take it out of the definition of "claim" under section

---

[102] Remand Hr'g Oral Argument at 10:24, 10-12184 (Bankr. W.D. Tex. Dec. 18, 2014).

[103] 744 F.2d 332 (3d Cir. 1984) *overruled by Jeld-Wen, Inc. v. Van Blunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010).

[104] *Pride Cos., L.P. v. Johnson (In re Pride Cos, L.P.)*, 285 B.R. 366, 373 (Bankr. N.D. Tex. 2002) (citing *In re Waterman*, 248 B.R. 567, 573 (B.A.P. 8th Cir. 2000); *Sakowitz, Inc. v. Chase Bank Int'l (In re Sakowitz)*, 110 B.R. 268, 271 (Bankr. S.D. Tex. 1989)).

[105] Claim Objection Hr'g Tr. 29-30, 10-12184 (Bankr. W.D. Tex. Jan. 27, 2011), ECF No. 137, Def. Ex. 3 at 3 ("If requested by the Beneficiary to foreclose this lien, Trustee shall . . . from the proceeds of the sale, pay . . . expenses of foreclosure, including a commission to Trustee of 5% of the bid . . . .").

101(5),[106] and certainly does not prevent it from being allowed under section 502.[107] In fact, section 502(c) provides for estimation of "any contingent or unliquidated claim, the fixing or liquidation of which . . . would unduly delay the administration of the case . . . ."[108] As mentioned above, the argument that a claim is not a prepetition claim if it is based on prepetition conduct, but does not accrue until after the petition date, is the same argument that was accepted by the Third Circuit in *Frenville*.[109] *Frenville* was roundly criticized[110] and ultimately reversed by the Third Circuit.[111] Furthermore, looking to prepetition conduct, agreement, or relationship in determining the prepetition status of a claim, rather than when the claim accrued, is why many environmental claims are treated as unsecured claims – even though the liability will not become fixed until the cleanup actually occurs, which may be years after the bankruptcy. As stated by the 5th Circuit in *Louisiana Department of Environmental. Quality v. Crystal Oil Co. (In re Crystal*

---

[106] According to section 101(5), a claim is a:

    (A)    Right to payment, whether or not such right is reduced to judgment, liquidated, **unliquidated**, fixed, **contingent**, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B)    Right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, **contingent**, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).

[107] *See SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 843-44 (9th Cir. 2009).

[108] 11 U.S.C. § 502(c)(1).

[109] 744 F.2d 332 (3d Cir. 1984) *overruled by Jeld-Wen, Inc. v. Van Blunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010).

[110] *Jeld-Wen, Inc. v. Van Blunt (In re Grossman's Inc.)*, 607 F.3d 114, 120 (3d Cir. 2010) (citing *Jones v. Chemetron Corp.*, 212 F.3d 199, 205-06 (3d Cir. 2000); *Cadleway Props., Inc. v. Andrews (In re Andrews)*, 239 F.3d 708, 710 n. 7 (5th Cir. 2001); *Watson v. Parker (In re Parker)*, 313 F.3d 1267, 1269-70 (10th Cir. 2002); *Am. Law Ctr. PC v. Stanley (In re Jastrem)*, 253 F.3d 438, 442 (9th Cir. 2001); *Epstein v. Official Comm. of Unsecured Creditors of the Estate of Piper Aircraft Corp. (In re Piper Aircraft, Corp.)*, 58 F.3d 1573, 1576 n. 2 (11th Cir. 1995); *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 8 n. 9 (1st Cir. 1992); *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 200-02 (4th Cir. 1988); *Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air. Corp. (In re W.R. Grace & Co.)*, 281 B.R. 852, 860 (Bankr. D. Del. 2002); *Firearms Imp. & Exp. Corp. v. United Capital Ins. Co. (In re Firearms Imp. & Exp. Corp.)*, 131 B.R. 1009, 1015 (Bankr. S.D. Fla. 1991); *In re Pan Am. Hosp. Corp.*, 364 B.R. 839, 843 (Bankr. S.D. Fla. 2007)).

[111] *Jeld-Wen*, 607 F.3d. at 125.

*Oil)*, "a regulatory environmental claim will be held to arise when 'a potential . . . claimant can tie the bankruptcy debtor to a known release of a hazardous substance.'"[112] Here, the Debtor obviously knew about its obligation to pay Goldsby's commission in the event of a foreclosure when it signed the Deed of Trust prior to bankruptcy. Thus, the fact that the foreclosure commission was earned postpetition does not prevent its allowance as a prepetition unsecured claim under section 502, and the Second and Ninth Circuits have so held in this very context.[113]

### 3. *Timbers* applies to interest, not fees and costs.

Another reason courts say that unsecured creditors cannot collect postpetition attorney's fees and costs, is that the Supreme Court's ruling in *Timbers*[114] mandates such a result. According to the bankruptcy court in *In re Electronic Machinery Enterprises, Inc.*:[115]

> In *Timbers*, the Supreme Court concluded that because section 506(b) permitted post-petition interest to be paid only out of an equity cushion, an undersecured creditor who had no such equity cushion fell within the general rule of disallowing post-petition interest. Courts that rely on *Timbers* to disallow post-petition attorneys' fees and costs reason that the rationale applies equally to the disallowance of post-petition attorneys' fees and costs to unsecured or undersecured creditors.[116]

But this reading of *Timbers* actually makes the case stronger for allowance of attorney's fees under section 502. The reason that postpetition interest can only be paid out of an equity cushion under section 506, and not allowed as an unsecured claim under section 502, is that

---

[112] *La. Dep't of Envtl. Quality v. Crystal Oil Co. (In re Crystal Oil)*, 158 F.3d 291, 296 (5th Cir. 1998) (quoting *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 974 F.2d 775, 786 (7th Cir. 1992)). *See also In re Hudson Oil Co., Inc.*, 100 B.R. 72, 79-80 (Bankr. D. Kan. 1989) (finding that the bankruptcy court could estimate a claim for future cleanup costs under section 502(c)); *In re Asarco, L.L.C.*, No. 05-21207, 2009 WL 8176641 at *5 (Bankr. S.D. Tex. June 5, 2009) (discussing hearings wherein the Court heard evidence related to estimating several environmental claims for future cleanup costs in the context of a motion to settle the claims).

[113] *Ogle v. Fid. & Dep. Co. of Maryland*, 586 F.3d 143, 146-47 (2nd Cir. 2009); *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 843-44 (9th Cir. 2009).

[114] 484 U.S. 365 (1988).

[115] 371 B.R. 549, 551 (Bankr. M.D. Fla. 2007) (citations omitted).

[116] *Id.*

postpetition interest is expressly disallowed under section 502(b)(2).[117] There is no such provision disallowing attorney's fees or other costs in section 502, and so *Timbers*' rationale for disallowing postpetition interest (other than out of an equity cushion) simply has no application to attorney's fees in general or to Goldsby's foreclosure commission here.[118]

**4. Neither policy nor equity are needed to properly apply sections 502 and 506.**

This Court need not resort to either policy or equity in making its decision, as the answer lies in simply reading the text of sections 502 and 506, and understanding what each section is designed to accomplish. In addition, the policy and equity arguments are at best indecisive. Cases denying fees and costs of secured creditors, or postpetition attorney's fees, cite "equality of distribution" as a basis.[119] They say that if attorney's fees can be allowed under section 502, contract creditors would have an advantage over tort creditors who cannot contract for recovery of attorney's fees.[120] On the other hand, the court in *Qmect, Inc. v. Burlingame Capital Partners II, L.P. (In re Qmect, Inc.)*,[121] concluded that equity was an insufficient basis to deny creditors their contractual claims for attorney's fees.[122]

Here, the Debtor presumably filed for bankruptcy to protect its equity in the Property from a hasty foreclosure sale and a resulting low bid. In fact, however, the bid was sufficient to pay all creditors in full, meaning that the funds at dispute here will either go to Goldsby or to the Debtor. It would be strange indeed, and not a little inequitable by any measure, if the commission the Debtor contractually agreed to pay to Goldsby is instead paid to the Debtor.

---

[117] 11 U.S.C. § 502(b)(2).
[118] *Ogle v. Fid. & Dep. Co. of Maryland*, 586 F.3d 143, 148-49 (2d Cir. 2009); *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 844-45 (9th Cir. 2009); *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 682 (6th Cir. 2006).
[119] *In re Elec. Mach. Enters., Inc.*, 371 B.R. 549, 551-52 (Bankr. M.D. Fla. 2007) (citing *Pride Cos., L.P. v. Johnson (In re Pride Cos., L.P.)*, 285 B.R. 366, 373-74 (Bankr. N.D. Tex. 2002).
[120] *Id.*
[121] 368 B.R. 882 (Bankr. N.D. Cal. 2007).
[122] *Id.* at 886.

Both the First and Eleventh Circuits have decried this anomalous result in solvent debtor cases.[123]

## V.    <u>CONCLUSION</u>

In conclusion, this Court holds that the Debtor's objection to Goldsby's claim is denied and Goldsby is entitled to an unsecured claim in the amount of $210,250. This Court also holds that the Debtor's objection to Wells Fargo's claim for attorney's fees is granted.

---

[123] *Gencarelli v. UPS Capital Bus. Credit (In re Gencarelli)*, 501 F.3d 1, 7 (1st Cir. 2007); *Welzel v. Advocate Realty Invs., L.L.C (In re Welzel)*, 275 F.3d 1308, 1319 (11th Cir. 2001).